IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY DAVIS HART II,        )
                            )
          Petitioner,     )
                            )
v.                        )      CIVIL ACTION NO.
                            )      01-00231-CB
JEFFERSON S. DUNN,       )
Commissioner, Alabama      )
Department of Corrections,[1]   )
                            
          Respondent.

## OPINION and ORDER

At the Court's direction, the parties, some time ago, submitted briefs addressing procedural default and the need for an evidentiary hearing. This order addresses procedural default and other grounds for dismissal raised by Respondent.

## Procedural Background

In 1990, Petitioner Gary Davis Hart II was convicted of capital murder in the Circuit Court of Mobile County, Alabama and was sentenced to death. He appealed, and both his sentence and conviction were affirmed by the Alabama Court of Criminal Appeals. *Hart v. State*, 612 So.2d 520 (Ala. Crim. App. 1992). That decision was affirmed by the Alabama Supreme Court. *Ex Parte Hart*, 612 So.2d 536 (Ala. 1992). Hart's petition for certiorari was denied by the United States Supreme Court. *Hart v. Alabama*, 508 U.S. 953 (1993). Following the conclusion of his direct appeal, Hart filed a petition for postconviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. After a hearing, the trial court denied the petition.

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court has substituted Jefferson S. Dunn

Hart appealed, but the Alabama Court of Criminal Appeals affirmed the lower court's decision.  *Hart v. State*, 778 So.2d 869 (Ala. Crim. App. 1999) (unpubl.), *cert. denied*, 800 So.2d 140 (Ala. 2000).

On March 28, 2001, Hart filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254.  While the petition was pending, the United States Supreme Court decided *Roper v. Simmons*, 543 U.S. 551(2005), which held that the imposition of the death penalty on persons under 18 when the crime was committed violated the Eighth and Fourteenth Amendments.  Thereafter, the Court entered an order directing the Respondent to show cause why the petition should not be granted in part, "insofar as petitioner seeks to vacate the sentence imposed on the ground that it violates the Eighth Amendment's prohibition on cruel and unusual punishment." (Ord., Doc. 40.)  In response, Respondent acknowledged that Petitioner, who was 16 years old at the time the murder was committed, was due to be resentenced to life imprisonment without the possibility of parole based on the Supreme Court's ruling in *Simmons*.  (Rsp., Doc. 41.)  The parties agreed that the case should be remanded to the Circuit Court of Mobile County for resentencing.  Accordingly, this Court granted the petition, in part, and remanded the matter to the Circuit Court of Mobile County for resentencing, but retained jurisdiction to decide any pending guilt-phase claims properly raised by the Petitioner.   (Remand Ord., Doc. 43.)  On August 16, 2005, Petitioner was resentenced to life in prison without the possibility of parole, the only other sentence available at that time under Alabama law.[2] (Doc. 45.)

---

[2] Subsequent to *Roper*, the Supreme Court held in *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 2469  (2012), "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."

**Facts**

### The Underlying Offense

In its opinion on direct appeal, the Alabama Court of Criminal Appeals

summarized the evidence presented at trial as follows:

> On August 12, 1989, the appellant and his accomplice, who were each
> armed with a handgun, entered the rear door of the L & N Seafood
> restaurant in Mobile, Alabama. Standing near the rear door was the
> restaurant's bartender, Steve Mason. Upon entering the restaurant,
> the appellant grabbed Steve Mason by the shirt, prodded him in the
> back with a .38 caliber pistol, and announced "this is a hold up, take
> me to the safe." Mr. Mason led the appellant to the office where the
> victim, Todd Evans, was working. Mr. Mason then informed the victim
> that they were being robbed and that the appellant wanted money.
> The victim did not reply but met the demand for money with a look of
> surprise. The appellant then shouted, "This ain't no bullshit," and
> brought the pistol within two feet of the victim's head and fired. The
> bullet entered the left side of the victim's face, traveled through his
> brain, and then lodged under the scalp on the right side of his head.
>
> Immediately following the shooting, Steve Mason retrieved a cash
> drawer from a filing cabinet in the victim's office and gave it to the
> appellant. The appellant and his partner then fled the scene on foot.
> They were spotted at a nearby hotel and after a brief chase were
> apprehended. During the chase, the appellant discarded a .38 caliber
> pistol, which was later identified as the murder weapon. At the time of
> the appellant's arrest, he was in possession of $499 in cash.

*Hart v. State*, 612 So.2d 520, 523 (Ala. Crim. App. 1992).

---

The Eleventh Circuit has held that *Miller* does not apply retroactively to cases on
collateral review. *In re Morgan*, 713 F.3d 1365 (11th Cir. 2013). However, there is
disagreement on the issue of retroactivity. *Compare Johnson v. Ponton*, 780 F.3d 219
(4th Cir. 2015) (*Miller* not retroactive); *Commonwealth v. Cunningham*, 81 A.3d 1 (Pa.
2013)(same); *State v. Tate*, 130 So. 3d 829 (La. 2013) (same) *with State v. Mantich*,
842 N.W. 2d 716 (Neb. 2014) (*Miller* retroactive); *In re New Hampshire*, 103 A. 3d
227 (N.H. 2014)(same), *petition for cert. filed, sub nom. New Hampshire v. Soto* (Dec.
1, 2014) (No. 14-639). The Supreme Court is expected to resolve the issue this term,
having recently granted heard oral argument in *Montgomery v. Lousiana*, 141 So.3d
264, *cert. granted* (U.S. March 20, 2015) (No. 14-280), a case in which the Louisiana
Court of Criminal Appeals, following *Tate*, *supra*, denied retroactive application of
*Miller*.

### Pretrial & Trial Proceedings

Attorneys Arthur Madden and Vader A. (Al) Pennington were appointed to represent Petitioner Gary Davis Hart following his indictment on a charge of capital murder. (R. Vol. 1, Tab R-1 at 9-10. ) Shortly thereafter, counsel filed a Request to be Treated as a Youthful Offender. *Id.* 11. A Youthful Offender Report, including a psychological evaluation, was submitted by the Alabama Department of Probation and Parole. *Id.* 19. After a hearing, at which defense counsel called two character witnesses, the trial court denied Youthful Offender status. (R. Vol. 2, Tab R-4.) Thereafter, defense counsel filed a motion for change of venue, which was denied, as well a motion for funds to hire experts, which was granted in part and denied in part. (R. Vol. 1, Tab R-1 at 33-38; R. Vol. 2, Tab R-7.) Defense counsel filed various pretrial motions regarding jury selection as well as motions in limine.

Prior to appointment of counsel, the trial court entered a standard discovery order. (R. Vol. 1, Tab R-1 at 12-13.) That order required the District Attorney to turn over to the defendant's attorney at arraignment various forms of evidence, including all statements made by the defendant (both written and oral); any and all exculpatory evidence; all physical evidence to be offered into evidence at trial; and results of scientific tests, experiments or examinations. (*Id.* ) The trial court also granted the State's motion for discovery, which requested "copies of photographs, documents and all other tangible documents" defendant intended to introduce into evidence at trial as well as "[c]opies of any results of reports of physical or mental examinations, and of scientific tests or experiments" to be introduced into evidence

at trial or which were prepared by a witness and related to the witness's testimony. (*Id.* 49-51.)[3]

At trial, the State presented testimony from three L&N employees who had witnessed the shooting and who identified Hart as the shooter.  The State also presented testimony from other employees who saw Hart and/or his accomplice at the restaurant shortly before or shortly after the shooting.  Other witnesses included several police officers who located the two nearby within a few hours of the shooting and took them into custody.  The State also presented the testimony of the state medical examiner and a firearms expert.

The defense did not deny that Hart was the shooter or that the shooting took place during the course of a robbery.  The defense strategy was to portray the shooting as accidental.  Hart testified in his own defense that he did not intend to shoot anyone and that he did not pull the trigger.  Through Hart's testimony, the defense established that Hart had a congenital condition that caused weakness in his right hand and arm.  The defense elicited testimony from the State's firearms expert that the firearm Hart used was of inferior quality and, when cocked, required less than 2 pounds of pressure to pull the trigger.

**Direct Appeal**

Hart raised numerous issues on direct appeal.[4]  Among the issues raised were the state's use of peremptory challenges, the denial of Youthful Offender status,

---

[3] At jury selection, the State's motion for discovery was determined to be moot because the defense did not intend to offer any discoverable evidence at trial. R. Vol. 2, Tab R-8 at 196.

[4] Hart was represented on direct appeal by attorney Ruth Friedman.

restriction's on voir dire, discovery rulings, prosecutorial misconduct, evidentiary rulings, the trial court's jury instructions, and the sufficiency of the evidence. These issues were raised before both the Court of Criminal Appeals (R. Vol. 5, Tab R-32) and before the Alabama Supreme Court (R. Vol. 6, Tab R-38).

### State Collateral Proceedings

After exhausting his direct appeal, Hart filed a petition for relief from judgment pursuant to Rule 32 of the Alabama Rules of Criminal Procedure ("state habeas").[5]  The petition asserted numerous grounds for relief from the conviction and sentence based on both Federal and state constitutional violations, including various claims of ineffective assistance of counsel.  Hart's petition was denied after an evidentiary hearing before the trial court, and he appealed to the Alabama Court of Criminal Appeals.  That appeal also raised a number of issues and was also unsuccessful.

### Federal Habeas Petition & *Roper v. Simmons*

Hart filed the instant habeas petition on March 28, 2001.  As noted above, *supra* at 2-3, this action was remanded to the sentencing court by agreement for resentencing pursuant to *Roper*.  The state court imposed a sentence of life without parole on August 16, 2005.  Petitioner's guilt-phase claims are ripe for review.

### Petitioner's Habeas Claims

The following twenty-four guilt-phase claims[6] remain pending:

---

[5] Hart was represented in the state habeas proceedings by current counsel.

[6] The Petition raised twenty-one claims related solely to sentencing issues, which have been rendered moot by subsequent proceedings. Some of the remaining claims are "hybrid" claims which raised both guilt-phase and sentencing-phase issues. With respect to such claims, only guilt-phase issues will be identified and addressed.

A.  Ineffective assistance of counsel based on the following:
    1.  Counsel's performance at the pretrial transfer hearing;
    2.  Counsel's performance at the pretrial transfer hearing insofar as that performance resulted from financial limitations placed on defense counsel;
    3.  Counsel's performance at the youthful offender hearing;[7]
    4.  Counsel's performance at the youthful offender hearing insofar as that performance resulted from financial limitations placed on defense counsel;[8]
    5.  Counsel's failure to protect Hart from prejudicial pretrial publicity;
    6.  Counsel's failure to protect Hart from prejudicial pretrial publicity due to financial limitations placed on defense counsel;
    7.  Counsel performance at voir dire;
    9.  Counsel failure to obtain and present evidence related to intent which was the result of financial limitations placed on defense counsel;
    10. Errors committed by counsel during trial; and
    13.  Cumulative errors of counsel.

B.  Improper denial of youthful offender status.

D.  The jury foreperson's misconduct and racial bias deprived Hart of his right to trial by an impartial tribunal.

E.  The trial court's discovery rulings violated Hart's constitutional rights under the Sixth Amendment.

F.  Prosecutorial misconduct violated Hart's constitutional right to a fair trial.

J.  Violations of the Sixth, Eighth and Fourteenth Amendment resulting from the following improper jury instructions:
    1.  Failure to give an adequate charge of the less-included offense of felony murder;
    2.  Failure to give a reckless murder charge; and
    3.  Failure to give a reckless manslaughter charge.

K.  Constitutional violations occurred during voir dire, to wit:
    1-3. The state used its peremptory challenges in a racially discriminatory manner;[9]

---

[7]The caption of Claim A3 relates to the pretrial transfer hearing, but the substance of the claim addresses the youthful offender hearing.

[8] Similar to Claim A3, the caption of this claim refers to the pretrial transfer hearing, but the body of the claim contains references to the youthful offender hearing.

[9] Claims K1-K3 are the same *Batson* claim broken into separate steps.  Specifically, K1 asserts a general *Batson* claim.  K2 addresses Petitioner's prima facie case of discrimination. K3 discusses evidence to rebut the state's race neutral reasons for its strikes.

4.  Violation of Hart's Sixth and Fourteenth Amendment Rights by the trial court's voir dire;[10]

5.  The trial court improperly excluded prospective jurors based on their capital punishment beliefs;

6.  The trial court's method for conducting voir dire was prejudicial.

L.  The evidence was constitutionally insufficient to sustain a guilty verdict because:

1.  The state failed to prove the element of intent beyond a reasonable doubt;

2.  The jury applied an unconstitutional standard of proof due to court's confusing jury instructions.

N.  The state suppressed favorable evidence in violation of *Brady v. Maryland*.[11]

## Issues Presented

Due to the number and complexity of the claims and issues, the Court divided the briefing in the case into two stages. Stage I is intended to address procedural default and the need for an evidentiary hearing, with the merits of all remaining to be addressed at Stage II.  In the Stage I brief, Respondent has asserted an additional matter for resolution.  Respondent argues that the Court should dismiss certain claims because those claims raise solely issues of state law and therefore fail to state a claim under 28 U.S.C. § 2254.  Below, the Court will address Respondent's "state law only" argument, then proceed to a review of the claims Respondent argues are subject to procedural default.

## "State Law Only" Claims

Respondent argues that the Court should dismiss several claims (B, D, E. G. H, J, M, O and P) "because they present only questions of state law" and therefore fail to

---

[10] There are no facts set forth in support of this claim, which also invokes the Eighth Amendment.  Because the Eighth Amendment deals with issues of punishment, any claim arising therefrom is moot.

[11] This claim is broken into 3 subparts (M1-M3) asserting different elements of the same *Brady* claim.  The underlying factual basis is the state's alleged failure to disclose a spontaneous statement made by Hart on the night of his arrest.

state a claim for relief under 28 U.S.C.S § 2254(a).  Respondent points out, correctly, that "[f]ederal habeas corpus does not lie to review errors, if any, under state law." (Resp't's Br. 35, Doc. 38.)  In support of this proposition, Respondent cites, first, federal habeas cases in which *the petition* raised a claim that was based purely on state law.  *See Pulley v. Harris*, 456 U.S. 37, 41 (1984); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (1983).  That is not the case here.  Each of the claims identified by the Respondent *is* framed as a federal constitutional violation.  Respondent asserts that the claims are purely issues of state law because the state court, either on direct appeal or collateral review, resolved these or similar claims based solely on state law.  But it is the federal habeas petition, not a state court opinion, that determines the nature of the claim and whether it raises a federal constitutional issue.  *Cf. Dye v. Hofbauer*, 546 U.S. 2 (2005) (per curiam) (state court's failure to mention a federal claim does not mean federal claim was not presented to it).

Each of the challenged claims raises one or more issues of federal constitutional law.  Claim B asserts that Petitioner was "improperly denied Youthful Offender treatment" because the hearing violated Petitioner's constitutional rights to confrontation and to avoid self-incrimination.  (Pet. ¶¶ 128-131, Doc. 1.) Claim D(1) alleges that the jury foreperson's racial bias deprived Petitioner of his constitutional right to a fair trial. (*Id.* ¶¶ 146-47).  Claim J asserts that the trial court's failure to properly instruct the jury on lesser-included offenses violated the Sixth, Eighth and Fourteenth Amendments.  (*Id.* subheading J.)   Finally, Claim P alleges that the introduction of autopsy photographs violated Petitioner's rights to due process and to a fair trial guaranteed by the Sixth and Fourteenth Amendments.

(*Id.* subheading P.)  Because the claims, as presented in the Petition, are not based

solely on state law, Respondent's argument for dismissal fails.

**Procedural Default**

   **Introduction**

   Respondent argues that the doctrine of procedural default should prevent

the Court from reaching the merits of all or part the following guilt-phase claims:  A2,

A4, A5, A6, A7, A8, A9, A10, A13, F, J, K1, K2, K4, K5, L, and N.  Petitioner counters

that all of the claims were raised in state court and were fully exhausted.  Therefore,

Petitioner asserts that none are procedurally defaulted.  Before addressing the

applicability of procedural default as to each claim, the Court sets out the law of

procedural default and related principles.

   **Applicable Law**

   The doctrine of procedural default, as it relates to petitions filed under 28

U.S.C. § 2254, arises from principles of comity and federalism.  *Francis v. Henderson*,

425 U.S. 536, 541 (1976).  A federal court

> will not consider an issue of federal law on direct review from a
> judgment of a state court if that judgment rests on a state-law ground
> that is both "independent" of the merits of the federal claim and an
> "adequate basis for the court's decision.  Although this doctrine
> originated in the context of state-court judgments for which the
> alternative state and federal grounds were both "substantive" in
> nature, the doctrine" has been applied routinely to state decisions
> forfeiting federal claims for violation of state procedural rules.

*Harris v. Reed*, 489 U.S. 255, 260-61 (1989) (internal citations and quotations

omitted).  Generally, violation of a state procedural rule is adequate to foreclose

federal review if the rule is "firmly established and regularly followed."  *Lee v.*

*Kemna*, 534 U.S. 362, 376 (2002).  A state court's decision is independent unless the

resolution of the state-law issue depends on a federal constitutional ruling. *Stewart v. Smith*, 536 U.S. 856, 860 (2002). While a federal court is generally precluded from reviewing the merits of a procedurally defaulted claim, there are exceptions to the rule.

Procedural default may be overcome in one of two ways. First the claim may be considered on the merits if the petitioner and show both cause for this failure to comply with the state procedural rule and prejudice resulting from the default. *Murray v. Carrier*, 477 U.S. 478 (1986). "[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 488. Prejudice, in this context, means a reasonable probability that the outcome would have been different. *Strickler v. Greene*, 527 U.S. 263 (1999). The second circumstance under which a procedurally defaulted claim may be considered is if the failure to review the claim would result in a fundamental miscarriage of justice." *Dugger v. Adams*, 489 U.S. 401, 415 (1989).

While procedural default obviously applies to federal constitutional claims that were denied by the state court on procedural grounds, it may also apply to federal constitutional claims that were never raised at all in state court. In the latter instance, the doctrines of procedural default and exhaustion converge. "Exhaustion of state remedies requires that the state prisoner 'fairly present[t] federal claims to the state court in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Snowden v. Singletary*, 135 F.3d 732, 735 (1998) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). Generally,

unexhausted claims must be returned to the state court for consideration on the merits unless the federal court determines that exhaustion would be futile. *Id.* at 736. If state procedural rules would preclude review of the claim on the merits, then exhaustion would be futile. *Id.* Thus, a federal court may conclude that an unexhausted claim would be procedurally barred because of the petitioner's failure to comply with state procedure. *Id.* at 737. In that instance, the doctrine of procedural default would apply even though the state court had never specifically invoked the state procedural rule.

To summarize, a federal court will not consider the merits of a federal constitutional claim on habeas review if that claim has been procedurally defaulted. If the constitutional claim asserted by the petition was presented and denied by the state court on adequate and independent state-law grounds, then procedural default applies. If the claim was never raised in state court but now would be barred from consideration by state procedural rules, the procedural default also applies. A procedurally defaulted claim may nonetheless be considered on the merits if petitioner can demonstrate either (1) cause for and prejudice from his failure to raise the issue in state court or (2) that failure to consider the merits would result in a fundamental miscarriage of justice.

### Claim A2:  Ineffective Assistance of Counsel at Pretrial Transfer Hearing Due to Financial Limitations

Respondent argues that this claim was not exhausted in state court because it was not raised on appeal either on direct appeal or collateral attack. Because consideration would be barred by state procedural rules, Respondent asserts, the claim is procedurally defaulted. Petitioner's sole response is that the claim was

exhausted because it was raised in the Rule 32 appeal and, for that reason, is not

procedurally barred.[12]  The claim asserted in this Court is that "[d]efense counsel

did not have the funds and therefore did not investigate and discover any evidence…"

to present on behalf of Petitioner at the pretrial transfer hearing (Pet. ¶ 34) and

"[Petitioner] was tried as an adult as a result of counsel's deficient representation. . .

due to  inadequate access to funds."  (*Id.* ¶ 35).   As evidence that he exhausted this

claim, Petitioner points to his Rule 32 appellate brief.

> The Eleventh Circuit has explained what the exhaustion requirement entails

as follows:

> In order to be exhausted, a federal claim must be fairly presented to
> the state courts. It is not sufficient merely that the federal habeas
> petitioner has been through the state courts … nor is it sufficient that
> all the facts necessary to support the claim were before the state
> courts or that a somewhat similar state-law claim was made.  Rather,
> in order to ensure that state courts have the first opportunity to hear
> all claims, federal courts have required a state prisoner to present the
> state courts with the same claim he urges upon the federal courts.
> While we do not require a verbatim restatement of the claims brought
> in state court, we do require that a petitioner presented his claims to
> the state court such that a reasonable reader would understand each
> claim's particular legal basis and specific factual foundation.

*McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal citations and

quotations omitted).

> Petitioner cites two separate ineffective assistance of counsel claims

presented to the state appellate court.  The first claim was asserted under

subheading A:  "Hart was deprived of his right to a fair trial by Counsel's failure to

effectively represent him at the pre-trial transfer hearing."  (R. Vol. 22 Tab R-55 at

---

[12] Petitioner does not dispute that state procedural rules would bar consideration of
the claim, nor does Petitioner invoke any exception to procedural default rule.

6.) On pages 6-9 of his Rule 32 brief, he argued that counsel rendered

constitutionally ineffective assistance at the pretrial transfer hearing because his

failure to investigate or to introduce any evidence at the transfer hearing was the

result of counsel's incompetence as opposed to a strategic decision. (*Id.* at 6-9.)  The

only mention of inadequate funding was made under subheading F, which can best

be described as a catch-all subheading: "Gary Hart was deprived of a fair trial by

counsel's failure to otherwise protect his interests before and during the trial." (*Id.*

21.)  Petitioner's entire argument regarding insufficient funding was as follows:

> Gary was also denied effective assistance of counsel at trial and
> on appeal by the insufficient funding provided by the State for the
> compensation of capital defense attorneys for their expenses. (v.5 at
> pp. 40-42).  In this regard Pennington's affidavit reflects that the funds
> provided by the State of Alabama were *wholly inadequate* to provide a
> proper defense.  (v.6 at p. 532). The available funds "did not begin to
> cover the fees and costs which are necessary to effectively defend any
> one charged with capital murder". *Id.*

(*Id.*)

Petitioner cannot satisfy the exhaustion requirement by cherry-picking

portions of separate and distinct state court claims.  "[T]o preserve a claim of

ineffective assistance of counsel for federal review, the habeas petitioner must

assert this theory of relief and transparently present the state courts with the

specific acts or omissions of his lawyers that resulted in prejudice." *Kelley v. Sect'y*

*for the Dept. of Corrections*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The legal theories

raised in state court must have been supported by the same "specific" facts asserted

in the federal habeas petition.  *Id.*  "[H]abeas petitioners may not present particular

factual instances of ineffective assistance of counsel in their federal petitions that

were not first presented to the state courts."  *Id.*   Petitioner did not assert in his Rule

32 appeal a claim that counsel rendered ineffective assistance at the pretrial

transfer hearing based on inadequate funds.  Therefore, that claim did not get one

full round of review in state court and was not exhausted.  *See* Ala. R. Crim. P.

32.2(a)(5) (precluding post-conviction relief for non-jurisdictional claims that could

have been raised on direct appeal).

### Claim A4:  Ineffective Assistance of Counsel at Youthful Offender Hearing Due to Inadequate Funding

This claim is similar to the claim above, except that it based on counsel's

performance at the Youthful Offender hearing, rather than the pretrial transfer

hearing.  As with he did with that claim, Petitioner has pulled together unrelated

portions of his Rule 32 appellate brief in an effort to demonstrate exhaustion.

Petitioner cites his claim of ineffective assistance of counsel at the youthful offender

hearing on pages 14-16 of that brief along with his generalized ineffective

assistance/insufficient funding claim asserted separately on page 21. (R. Vol. 22 Tab

R-55 at 14-16 & 21.)  For the same reasons cited *supra* at 12-15, this claim is not

exhausted and, therefore, is procedurally defaulted.

### Claim A5:  Counsel Failed to Protect Petitioner from Pretrial Publicity

In this claim, Petitioner asserts that counsel failed to subpoena members of

the media to testify regarding the extent of pretrial publicity, failed to properly

question jurors about their exposure to publicity, and failed to obtain a change of

venue.  Respondent argues that this is not the same ineffective assistance/pretrial

publicity claim asserted in the amended Rule 32 petition and on appeal.  Petitioner,

on the other hand, points out that the claim was "made on page 10 of [his] Rule 32

Brief. . . to the Alabama Court of Criminal Appeals."   (Pet'r's Br. 25, Doc. 37.)  As

Petitioner acknowledges, claims raised in the Rule 32 petition <u>and</u> on appeal from the denial of the Rule 32 petition are preserved for habeas review. *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003) (to exhaust constitutional claim prisoner must invoke one *full* round of state appellate review).

Only one factual basis supporting this claim was raised in <u>both</u> the amended Rule 32 petition and in the Rule 32 appeal. On appeal, Petitioner's ineffective assistance/pretrial publicity argument was asserted under a claim of ineffective assistance in "empaneling the jury." (R. Vol. 22 Tab R-55 at 10.) Therein, Petitioner asserted that counsel's "failure to protect [Petitioner] from the effects of pre-trial publicity constituted ineffective assistance of counsel [in empaneling the jury]." (*Id.*) Broadly construed, the claim asserted on appeal (i.e., ineffective assistance/empaneling the jury/pretrial publicity) can be considered to encompass failure to properly question jurors about their exposure to pretrial publicity. Therefore, that portion of the claim is exhausted and is not procedurally barred. However, both failure to obtain media testimony and failure to obtain a change of venue are completely unrelated to the ineffective assistance/empaneling the jury claim asserted in the Rule 32 appeal. Consequently, Petitioner's claim is not exhausted, and is procedurally barred, to the extent it relies on those underlying factual bases.

### Claim A6:  Financial Limitations Placed on Defense Counsel did not Provide Defense Counsel with Sufficient Resources to Effectively Protect Petitioner from Adverse Pretrial Publicity

Petitioner alleges that counsel rendered ineffective assistance because "the trial court refused to grant him funds to conduct a survey of the community" thus

rendering counsel unable to protect Petitioner from prejudicial pretrial publicity. (Pet. ¶¶ 68-69.)  According to the petition, counsel's deficient performance in this regard made it impossible for Petitioner to receive a fair trial and resulted in his conviction.  (*Id.* ¶ 69.)  Respondent argues that this claim was not raised in Petitioner's Rule 32 appeal.  Petitioner counters that "the substance of the claim" was raised on appeal, but once again Petitioner pulls language from two disparate claims and attempts to pass them off as the claim now asserted.  First, he cites his claim that counsel failed to protect him from pretrial publicity on page 10 of his Rule 32 brief, which makes no mention of financial limitations.  (R. Vol. 22 Tab R-55 at 10.)  Next, he cites his argument on page 66 of the same brief, in support of his claim that the trial court's discovery rulings deprived him of the fair trial.  (*Id.* at 66.) One of the rulings cited was the Court's denial of his motion for funds to conduct a survey regarding the effects of pretrial publicity.  No powers of legal intuition are strong enough to decipher one claim from these two wholly unrelated assertions set apart by more than 50 pages.  This claim was not exhausted and is, therefore, procedurally defaulted.

### Claim A7:  Petitioner was Deprived of his Right to a Fair Trial by an Impartial Jury by Defense Counsel's Failure to Conduct a Proper Voir Dire and by Defense Counsel's Failure to Question Prospective Jurors About Racial Bias

Respondent argues that this claims is partially defaulted in that certain factual averments set forth in support of this claim were not raised fully exhausted. Specifically, Respondent asserts that the facts asserted in paragraphs 73 and 74 were not raised in either Amended Rule 32 Petition or in the Rule 32 appeal and that the facts asserted in paragraph 76 were not asserted in the Rule 32 appeal.

Respondent is partially correct.  In paragraph 73, Petitioner asserts that counsel was ineffective because he failed "to make a diligent examination of the venire pool prior to jury selection in support of a <u>Batson</u> challenge" and was unable to ask particularized questions related to the state's proffered explanations for striking jurors.  Both of these assertions were raised in the Amended Rule 32 Petition (R. Vol. 8 Tab R-48 ¶¶ 48 & 49) and in the Rule 32 appeal (R. Vol. 22 Tab R-55 at 11-12) and are therefore preserved for review.

However, paragraphs 74 and 76, have not been exhausted and are procedurally defaulted.  First, Petitioner does not dispute Respondent's claim that Paragraph 76 is procedurally defaulted.[13] Respondent argues that the substance of paragraph 74 was raised in the Amended Rule 32 Petition and in the Rule 32 appeal. In that paragraph, Petitioner assets that defense counsel was unable to effectively empanel an impartial jury due to the trial court's unreasonable time limitations on voir dire and the court's refusal to allow sequestered questioning of prospective jurors.  But those factual assertions were not related to any ineffective assistance of counsel claim in the Rule 32 proceedings.  Although included in both the Amended Rule 32 Petition and in the Rule 32 appellate brief, these assertions were raised in support of Petitioner's claim that the trial court violated his right to a fair trial.  (R. Vol. 8 Tab R-48 ¶¶ 114-16; R. Vol. 22 Tab R-55 at 58-59.)

> **Claim A9: Financial Limitations placed on Defense Counsel Denied Defense Counsel Sufficient Resources to Effectively Represent Petitioner Before Trial**

---

[13] That paragraph alleges that "[d]efense counsel allowed a juror with fixed opinions about the case to remain on the panel."

The question presented is whether paragraph 85--which asserts that defense counsel, due to lack of funds, was "unable to investigate [Petitioner's] background to discover and offer evidence of [his] drug and alcohol use on the night of the crime [to negate intent]"--is procedurally defaulted.  Petitioner admits that this factual basis was never specifically raised in state court but, citing *Vasquez v. Hillery*, 474 U.S. 254 (1986), argues that the inclusion of additional facts in support of an otherwise exhausted claim does not preclude habeas review.  In that case, however, the federal court had requested additional evidence regarding the grand jury's racial makeup which, in turn, was related to the prisoner's "equal protection challenge to the grand jury that indicted him." *Id.* 474 U.S. at 256.  The Supreme Court rejected the state's objection on exhaustion grounds, stating: "We have never held that presentation of additional facts to the district court, pursuant to that court's directions, evades the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts." *Id.* 474 U.S., 257-58.

These are not merely new facts supporting a claim presented to the state court.  This is an entirely new claim.  The basis of Petitioner's financial limitations/ineffective assistance before trial claim in state court was counsel's failure to obtain and present a firearms expert (regarding the sensitivity of the trigger) and a medical expert (regarding the medical condition of his arm) both of which were relevant to his claim that the gun discharged accidentally.  (R. Vol. Tab R-55 at 13-16.)  Counsel's alleged failure to discover and present evidence of drug and alcohol abuse on the night of the crime does not constitute "additional facts" in support of counsel's alleged failure to obtain expert testimony.  The state court did

19

not have a full and fair opportunity to consider this new rendition of Petitioner's ineffective assistance of counsel claim. Thus, Petitioner's claim that counsel's failure to discover and present evidence of Petitioner's drug and alcohol use amounted to ineffective assistance is unexhausted and is procedurally barred. The remainder of Claim A9 has been exhausted and is *not* procedurally barred.

### Claim A10: Petitioner was Deprived of his Right to a Fair Trial by an Impartial Jury by Defense Counsel's Failure to Protect his Constitutional Rights During the Trial

Within this claim, the Petition alleges a laundry list--twenty-four separate instances--of ineffective assistance of counsel at trial. Respondent asserts that none of these specific instances are exhausted because they were not fully presented for review at the Rule 32 stage—some because they were not raised in the either the Amended Rule 32 Petition or on appeal and others because they were not raised on appeal. Petitioner insists that the issues were raised and exhausted and points to his Rule 32 appellate brief. But, once again, Petitioner attempts to satisfy the exhaustion requirement by pointing to general legal principles asserted in state court along with "'makeshift needles in the haystack of the state court record.'" *Kelley*, 377 F.3d at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

Upon careful review of the pleadings, the Court concludes that two of these subclaims have been exhausted and are, therefore, preserved for review. Petitioner did argue in his Rule 32 appeal that "[d]efense counsel failed to timely interject appropriate objections at trial, thereby resulting in prejudicial and improper statements by the prosecution to the jury." (R. Vol. 22 Tab R-55 at 21.) Although no

supporting evidence was discussed, the brief noted that "[t]hese omissions were described in the Rule 32 Petition at v1 pp. 34-38." In other words, the appellate brief incorporated by *specific* reference certain claims asserted in the Amended Rule 32 Petition. However, only three guilt-phase omissions by counsel were asserted in the cited pages of the Amended Rule 32 Petition, and only two of those are reasserted in the federal petition. The first is counsel's failure to object to the State's misstatement of the law, implying that the burden of proof was on the Defendant by stating that intent was inferred. (R. Vol. 8 Tab R-48 at 35.) This claim is equivalent to the subclaim asserted in paragraph 95 of the federal petition, which alleges that counsel rendered ineffective assistance by "fail[ing] to object to the State's mischaracterization of. . . the law regarding intent."[14] (Pet. ¶ 95.) The second omission incorporated by reference into the Rule 32 appellate brief was counsel's failure to object to Biblical quotations made by the prosecutor. This claim is nearly identical to paragraph 102 of the federal petition which alleges that "[d]efense counsel failed to object to the State's citation to biblical authority or religious duty." (Pet. ¶ 102.)

The Court finds that the two subclaims cited above, found in paragraphs 95 and 102 of the federal petition, are exhausted and are *not* procedurally barred. The remaining guilt-phase subclaims set forth in section A10 have not been exhausted and are, therefore, procedurally barred.

---

[14] This paragraph also asserts that counsel "failed to object to the State's mischaracterization of [Petitioner's] testimony." (*Id.*) That aspect of this subclaim was not a part of the state record cited and is, therefore, not exhausted and is procedurally barred.

**CLAIM A13:  Petitioner was Deprived of his Right to a Fair Trial by an Impartial Jury by the Cumulative Effect of Defense Counsel's Errors**

Petitioner sets forth two alternative responses to Respondent's argument that this claim is unexhausted.  First, Petitioner argues that an assertion of cumulative error is a legal argument, not an independent claim,[15] and therefore exhaustion is not required.  Numerous courts have rejected this argument.  *See, e.g.*, *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008) (raising a number of errors "does not automatically require the court to consider whether the cumulative effect of the alleged errors prejudiced the petitioner"); *Harris v. Estelle*, 487 F.2d 1293, 1298 (5th Cir. 1974) (dismissing, for failure to exhaust, claim that cumulative effect of cumulative effect of all constitutional errors denied him due process); *accord Greene v. Cooper*, 2013 WL 1567444, *8 n.8 (W.D. La. Feb. 20, 2013) (applying exhaustion requirement to aggregate effect of ineffective assistance of counsel claim); *Moore v. Quarterman*, 526 F.Supp.2d 654, 710 (W.D. Tex. 2007) (applying exhaustion requirement to ineffective assistance/cumulative errors claim); *cf. McCormick v. Six*, 306 Fed.Appx. 424 (10th Cir. 2009) (denying COA and discerning no error in trial court's finding that petitioner failed to exhaust claim of cumulative error of trial counsel claim).  This Court, too, finds that an ineffective assistance claim based on cumulative error is a separate claim that must be presented to the state court for one full round of review.

Petitioner argues, alternatively, that he did present this claim to the state court for review and points to the following statement in his Rule 32 appellate brief:

---

[15] This argument begs the question:  If it is not a separate claim, why was it presented as one in the Petition?

> When the record in this case is viewed in its entirety – from the pre-
> trial transfer and youthful offender hearings, through the trial, and
> finally the penalty phase – the conclusion is in escapable:  counsel's
> abysmal representation of Gary Hart denied him of his constitutional
> right to counsel during trial.

(R. Vol. 22 Tab R-55 at 6.)  Even assuming the inclusion of that argument could be

considered an ineffective assistance claim based on cumulative errors,[16] it does not

satisfy the exhaustion requirement.   The issue was not raised in the Amended Rule

32 petition and, therefore, was not preserved for state appellate review.  *Moody v.

State*, 95 So. 3d 827, 854 (Ala. Crim. App. 2011) (Rule 32 argument not raised in

state circuit court "not properly before [appellate court] for review").  In conclusion,

Petitioner's ineffective assistance claim based on the cumulative effect of defense

counsel's errors is a claim, not merely a legal argument.  As such, it is procedurally

barred because Petitioner failed to exhaust this claim in state court.

### Claim B:  Mr. Hart Was Improperly Denied Treatment as a Youthful Offender

Respondent argues that this claim is partially defaulted. Specifically,

Respondent argues that Petitioner failed to exhaust that portion of the claim found

in paragraph 128, which states:

> The admission of prejudicial hearsay testimony at [the
> Youthful Offender] hearing unfairly deprived [Petitioner] [of] a
> meaningful opportunity to avail himself of Alabama's youthful
> offender laws and violated [his] Constitutional rights to confrontation
> and to avoid self-incrimination.   The trial court improperly denied
> [Petitioner's] challenge to the propriety of the court's use of two
> pieces of unreliable hearsay testimony contained in Gary's youthful
> offender report admitted at his youthful offender hearing.  [T]his

---

[16] Whether it was transparently presented to the state appellate court as a separate
claim is arguable.  The state court did not interpret it as such.  Moreover, the
statement reads more like a dramatic introductory paragraph rather than a separate
ineffective assistance of counsel claim.

> report included the double hearsay statement of Dr. Catlin, Gary's
> former school principal... Dr. Catlin expressly testified at the Rule 32
> hearing that he had no recollection of [this statement] and that [the
> statement] was inconsistent with his opinion of [Petitioner].

(Pet., Doc. 1, ¶ 128.)  Petitioner argues that this claim was raised on direct appeal,

before both the Alabama Court of Criminal Appeals and the Alabama Supreme Court

and cites to portions of briefs submitted to each court.  However, the cited portions

of these briefs cited do not support Petitioner's claim.  Neither mentions hearsay

testimony introduced at the Youthful Offender hearing.  Both appellate briefs do

make an argument regarding hearsay in the Youthful Offender report, but the

evidence cited as hearsay is not the same evidence that Petitioner relies on here.  On

appeal, Petitioner argued that the psychological evaluation appended to the report

amounted to inadmissible hearsay. (R. Vol. 5 Tab R-32 at 63-65; Vol. 6 Tab R-32 at

98.)  Here, Petitioner argues that the statement of his former high school principal

amounted to hearsay.  The legal argument may be the same, but the factual basis

clearly is not.  Consequently, Petitioner has failed to exhaust the portion of Claim B

found in paragraph 128, and that claim is procedurally defaulted.  The remainder of

Claim B is ripe for review on the merits.

### Claim F:  Prosecutorial Misconduct Deprived Petitioner of a Fair Trial in Violation of the United States Constitution

Respondent initially argued that this claim was partially defaulted in that

three of the factual or legal bases asserted in support of this claim—found in

paragraphs 158, 163 & 167--have not been exhausted because they were not raised

on direct appeal.  However, Respondent subsequently abandoned some of those

arguments after Petitioner cited portions of the record that contradicted

Respondent's assertions.  First, Petitioner's prosecutorial misconduct claim in paragraph 158 of the Petition-- that he was deprived of a fair trial because "[t]he State used its peremptory challenges in a discriminatory manner, depriving [Hart] of his right to be tried by a jury of his peers"-- was raised on direct appeal as a prosecutorial misconduct claim. (R. Vol. 5, Tab R-32 at 83.)  Respondent now admits as much.[17]  Similarly, Respondent concedes that the prosecutorial misconduct claim asserted in paragraph 163—that the State participated in the investigation—was also raised on direct appeal.

Finally, Respondent argues that the claim in paragraph 167—that "[t]he State's repeated remarks regarding the age of the victim were an attempt to prejudice the jury and 'infect the trial with unfairness'"--has not been exhausted because it was not raised in an identical manner in state court.  When a claim is presented in such a way that "a reasonable reader would have understood" the substance of that claim, the exhaustion requirement is satisfied.  *Williams v. Allen*, 542 F.3d 1326, 1346 (11th Cir. 2008).   On direct appeal, Petitioner cited the prosecutor's repeated remarks about the age of the victim as evidence of prosecutorial misconduct in violation of the United States Constitution.  (R. Vol. 5 Tab R-32 at 85; Vol. 6, R-38 at 120.)  That was more than sufficient to raise the substance of the claim.

_____

[17] However, in his reply brief, Respondent argues that the citation to *Trevino v. Texas*, 503 U.S. 562 (1992) should be disregarded because it was not cited in the direct appeal.  A case citation, standing alone, is not a claim.  The claim itself—that the use of peremptory challenges amounted to prosecutorial misconduct in violation of the United States Constitution—was raised on direct appeal.

**Claim J:  The Trial Court's Failure to Properly Instruct the Jury on Lesser Included Offenses at the Guilt/Innocent Phase Violated the Sixth, Eight and Fourteenth Amendments of the United States Constitution**

Initially, Respondent argued that five subclaims were partially defaulted, but that number has been reduced to two.  The first, found in paragraph 215, is that the trail court's "failure to explain the difference between felony murder and a capital offense with regard to the issue of intent" resulted in an ambiguous instruction.  (Pet. ¶ 215.) This ambiguous instruction, according to the Petition, violated Petitioner's due process rights because there was a reasonable likelihood that the jury applied the challenged instruction in a way the violates the Constitution.  (*Id.*)  The second, found in paragraph 223, is that the trial court's failure to instruct the jury on reckless manslaughter violated Petitioner's constitutional rights.  (*Id.* ¶ 223.)

While the facts underlying both claims were set out in Petitioner's direct appeal, neither was asserted as a federal constitutional violation and no such claims reasonably could be gleaned from the state court record.  Petitioner's direct appeal brief to the Alabama Supreme Court cited only state law in support of the claim that Petitioner was entitled to a reckless manslaughter instruction.  (R. Vol. 6 Tab R-38 at 97-98.)  With respect to the felony murder/capital murder charges and the issue of intent, Petitioner argued on direct appeal that the felony murder charge was infirm because it did not "explicitly explain" that the difference between felony murder and capital murder was intent.  That argument was contained in a footnote to an argument that the trial court should have given a lesser included instruction on reckless murder. Neither an objection to jury instructions on state law ground nor a potential claim hidden in a footnote and citing no law could have put the state court

on notice that Petitioner was attempting to raise a federal constitutional violation. As the Eleventh Circuit has held that "[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell,* 416 F.3d 1291, 1303 (11th Cir. 2005). The subclaims found in paragraphs 215 and 223 are procedurally defaulted; the remaining subclaims are ripe for review.

### Claim K:  Petitioner Was Denied a Fair Trial By an Impartial Jury Due to Constitutional Violations During Voir Dire

The Petition asserts several subclaims under this heading. Respondent argues that some of these subclaims are, in part, procedurally defaulted because those claims were not exhausted. Each of these is discussed below.

### *Subclaim 1:  Improper and Prejudicial Use of Peremptory Challenges*

Respondent asserts that the following two sentences of one paragraph of this subclaim is procedurally barred:

> Without an adequate voir dire, the trial court's responsibility to remove prospective jurors who will not be able to impartially follow instructions and evaluate evidence cannot be fulfilled. *See Conners v. United States*, 158 U.S. 408, 413 (1895). Yet, despite these prevailing Constitutional interpretations, Gary was still denied the opportunity to be tried in front of an impartial jury.

(Pet. ¶ 224.) [18] This is a broad statement, and the specific factual basis for the claim is not clear. However, the direct appeal did raise a constitutional challenge based on restrictions placed on voir dire by the trial judge. (R. Vol. 5 Tab R-32 at 76-77; Vol. 6

---

[18] Respondent initially argued that the entire subclaim was procedurally barred but subsequently limited his argument to the above-quoted sentences.

Tab R-38 at 11-112.)  To the extent this subclaim encompasses that challenge, it has been exhausted and, therefore, is not procedurally barred.

### Subclaim 3: State's Proffered Race Neutral Explanations for Strikes

In order to understand the exhaustion issue with respect to this claim, a brief review of *Batson v. Kentucky,* 476 U.S. 79 (1986), is necessary.  *Batson* set forth the framework for determining whether a prosecutor's exercise of a peremptory challenge violates the Equal Protection Clause.   This is a three-step process.  First, the defendant bears the burden of establishing a prima facie case of purposeful discrimination.  *Id.* at 94. Next, the burden shifts to the state to proffer a race neutral explanation for his strikes.  *Id.* at 97.   Finally, the court must determine whether the defendant has met his burden of proving purposeful discrimination.  *Id.* at 98.  The second step of the inquiry requires the trial court to determine only whether the explanation offered is, on its face, racially neutral.  *Hightower v. Terry,* 459 F.3d 1066, 1073 (11th Cir. 2006).  In contrast, the final step (step three) involves evaluating the "the plausibility of that reason in light of all evidence bearing on it." *Id.*

Respondent contends that Petitioner's *Batson* argument in the last half of paragraph 233 has not been exhausted.  The beginning of that paragraph asserts that there is no evidence to support the state's assertion that it struck two prospective jurors—Haygood and Thompson—"because of the former's demeanor and the latter's unemployment."  There is no dispute that this portion of the claim is exhausted; it was asserted on direct appeal as a *Batson* step three claim.   The issue arises with the second half of paragraph 233, which turn this into a different claim-- a *Batson* step two claim.  It does so by citing cites *United States v. Horsley*, 864 F.2d

1543, 1546 (11th Cir. 1989), for the proposition that vague general assertions do not suffice as race neutral explanations to rebut a defendant's prima facie case of discrimination.  In state court, Petitioner argued only that the reasons for striking Haygood and Thompson amounted to a *Batson* step three claim (because the reasons were not plausible) and never asserted a *Batson* step two claim (that the reasons were insufficient to rebut a prima facie case) based on these facts. Consequently, the Court finds that the *Batson* step two claim asserted in the last two sentences of paragraph 233 has not been exhausted and is procedurally defaulted.

In paragraphs 235 through 238 (also part of subclaim 3), Petitioner asserts constitutional claims arising from the alleged underrepresentation of African-Americans and women on the jury venire.  Petitioner does not contest Respondent's assertion that these claims were not presented to the state court for review.  The claims asserted in these paragraphs are procedurally barred for failure to exhaust.

### Subclaim 4:  Improper & Prejudicial Voir Dire/Right to Trial by Impartial Jury

This claim consists of one sentence (paragraph 240).  Petitioner does not contest Respondent's assertion that this claim was not presented to the state court for review.  It is, therefore, procedurally barred.

### Subclaim 5:  Exclusion of Prospective Jurors Based on Capital Punishment Beliefs

In this subclaim, Petitioner asserts that the prosecution improperly questioned jurors regarding their views on capital punishment, then used the answers to exclude prospective jurors for cause.  Respondent argues that Petitioner failed to exhaust a portion of this subclaim set forth in paragraphs 241-43.  Contrary

to Respondent's argument, the substance of these paragraphs was raised on direct

appeal.[19]  (Vol. 6, R. 38 at 112-15; Vol. 5, R. 32 at 78-79.)  The challenged portions of

this subclaim are not procedurally defaulted.

**Claim L:  Sufficiency of the Evidence**

Respondent asserts that three portions of this claim are procedurally barred

because "[t]he factual and legal averments contained in paragraphs 254 (third

Sentence), 257 (second sentence), and 258-59 (to the extent that Hart argues

anything other than because the instructions violated *Cage v. Louisiana*, 498 U.S. 39

(1990), it violated *Winship*) were not presented to the state courts. . . on direct

appeal." (Resp't's Br. 22, Doc. 28.)    To be clear, paragraphs 258-59 have been

exhausted and are not procedurally barred.[20]  The third sentence of paragraph 254

is not procedurally barred because it was asserted verbatim on direct appeal.[21]

Finally, the substance of the claim asserted in the second sentence of paragraph 257

is merely a more specific description of the shortcomings of the trial court's

instruction on the element of intent.  That claim was presented to the state court on

---

[19] Respondent's primary objection is that Petitioner did not rely on *Morgan v. Illinois*, 504 U.S. 719 (1992), in his direct appeal.   This omission is quite understandable since *Morgan* was decided while this case was on direct appeal and after after the briefs was filed.

[20] If Petitioner attempts to argue the assertions made in these paragraphs to support a claim that has not been exhausted, then Respondent may reassert the exhaustion/procedural bar defense as to this claim.

[21] Confusion has arisen because Respondent identified the alleged unexhausted claim as "the third sentence" of paragraph 254 without any reference to the substance of the sentence.  Petitioner responded by quoting the third sentence of paragraph 254 and pointing to the portions of the direct appeal containing that sentence.  In his reply brief, Respondent asserts that the Petitioner has actually quoted the second sentence of paragraph 254.  It is Respondent who is mistaken.

direct appeal and is, therefore, exhausted.  (R. Vol. 5 Tab R-32 at 107; R. Vol. 6 Tab R-28 at 142.)

### Claim N:  The State Suppressed Evidence in Violation of *Brady v. Maryland*

Petitioner claims that the state violated *Brady v. Maryland* by failing to disclose a post-arrest statement made by Petitioner on the night of the shooting.  At the Rule 32 hearing, Major Lester Hargrove of the Mobile Police Department testified that he was in charge of the criminal investigation.  On the night Petitioner was arrested, Hargrove went into the holding room at police headquarters to take Petitioner a pair of shoes that he had requested.  Hargrove's testimony regarding his interaction with Petitioner was as follows:

> MR. JASKOWIAK:  Did Gary tell you anything about the crime as far as his intent to shoot or pull the trigger on the weapon?
>
> MAJOR HARGROVE:  Only that:  I didn't mean to shoot that guy. That's all he said.

(R. Vol. 13 at 187.)

Respondent argues that this claim is procedurally barred because it was not raised on direct appeal or in the Rule 32 petition.  Further, Respondent points out that the claim was raised in the Rule 32 appeal but was denied based on procedural default.

The Alabama Court of Criminal Appeals addressed the *Brady* claim as follows:

> The appellant contends that the State's suppression of favorable and material evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), violated his federal and state constitutionals rights.  He argues that the State suppressed evidence of his statement to a police

> officer on the night of the murder acknowledging that he did not
> intend to kill the victim.
>       This argument, however, has been raised for the first time on
> appellate review.  Because the argument was never before the trial
> court, it is procedurally precluded from appellate review.  *McNair v.*
> *State*, supra; *Thompson v. State*, supra.

V. 22, R. 59 at 13.

The state appellate court's ruling on procedural default is conclusive. [22]

"[F]ederal habeas corpus principles [are] designed to prevent federal courts from

interfering with a State's application of its own firmly established, consistently

followed, constitutionally proper procedural rules. . . . Those principles have long

made clear that a conviction that rests upon a defendant's state law 'procedural

default' (for example, the defendant's failure to raise a claim of error at the time or

in the place that state law requires), normally rests upon 'an independent and

adequate state ground.'"  *Trevino v. Thaler*, __ U.S. __133 S. Ct. 1911, 1917, 185 L. Ed.

2d 1044 (2013).

Petitioner alternatively argues that he can overcome the procedural default

by demonstrating cause for and prejudice from his failure to raise the *Brady*

violation in the Rule 32 petition.  He contends that "the 'cause' of not including the

claim in his original petition was the State's illegal withholding of evidence" and that

"[t]he prejudice. . ., the absence of [a] *Brady* claim is obvious."  (Pet'r's Br. at 37 n. 6,

Doc. 37.)  The Court need not consider whether Petitioner has demonstrated cause

---

[22] In disagreement with the Court of Criminal Appeals, Petitioner argues that the
*Brady* claim was added to the Rule 32 petition *after* the hearing and has attached a
copy of a letter mailed to the trial court along with a copy of the *proposed*
amendment adding the *Brady* claim. (Exs. A & B to Pet'r's Br., Doc. 37.)  Apparently,
the *proposed* amendment did not become part of the record. In any event,
Petitioner's argument is a challenge to the state law's procedural default ruling, a
ruling this Court cannot disturb.  *See Trevino,* 133 S.Ct at 1917.

because he clearly cannot prove that he was prejudiced by the state's failure to disclose the statement.  A habeas petitioner establishes prejudice for failing to raise a defaulted *Brady* claim by convincing the court "that there is a 'reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." *Crawford v. Head*, 311 F.3d 1288, 1328 (11th Cir. 2002).

There is no reasonable probability of a different result here because the undisclosed statement would not have been admissible at trial.  "The law is well settled in [Alabama] that [the] self-serving declarations of an accused, made before or after the offense are not admissible for him unless they are part of the res gestae." *Harrell v. State*, 470 So. 2d 1303, 1306 (Ala. Crim. App. 1984).   Petitioner's statement would not qualify as part of the res gestae, which is "broadly [ ]defined as matter incidental to the main fact and explanatory thereof, and includes acts and words which are so closely connected therewith as to constitute a part of the transaction." *Moore v. State*, 697 So.2d 800, 804. (Ala. Crim. App. 1996) (quoting R. Williams, *Williams Alabama Evidence* § 139 (1967)(footnotes omitted)). Res gestae statements are admissible as an exception to the hearsay rule and are considered reliable because they arise from "a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction . . . made under such circumstances as to show lack of forethought or deliberate design in the formulation of their content." *Id.*  An accused's post-arrest exculpatory statement does not fall within this exception, as demonstrated by a number of Alabama cases.  *See, e.g.*, *Kennedy v. State*, 469 So. 2d 1333 (Ala. Crim. App.

1985) (defendant's self-serving statement to investigator after arrest not admissible); *Miller v. State,* 441 So.2d 1038 (Ala. Crim App. 1983) (same).  Indeed, the Alabama Court of Criminal Appeals found a statement to be inadmissible under nearly identical circumstances.  In *Harrell* the defendant was charged with capital murder but claimed that the shooting was not intentional.  The trial court refused to allow into evidence the defendant's post-arrest statement that the gun accidentally discharged.  The appellate court upheld the trial court's ruling, noting the statement "fit the classic definition of hearsay."  *Harrell*, 470 So.2d at 1306.  This claim is procedurally defaulted, and Petitioner cannot establish prejudice to overcome the procedural default.

**Conclusion**

In summary, the penalty phase claims as stated in the original petition are **moot** due to the resentencing.  Some of Petitioner's guilt phase claims are procedurally defaulted and, therefore, due to be dismissed.

1. The following claims are **dismissed in their entirety**:
   - A2--Ineffective assistance of counsel/pretrial transfer hearing/financial limitations
   - A4--Ineffective assistance of counsel/youthful offender hearing/financial limitations
   - A6--Ineffective assistance of counsel/insufficient resources to protect petitioner from pretrial publicity;
   - A13--Ineffective assistance of counsel/cumulative errors
   - K4--Improper and prejudicial voir dire/right to trial by impartial jury
   - N--*Brady* violation

2. The following claims are **dismissed in part**:
   - A7--Paragraphs 74 & 76
   - A9—Paragraph 85
   - A10—Paragraphs 90-94, 96-101, and 103-113
   - B—Paragraph 128
   - J—Paragraphs 215 & 223

- K3—Paragraphs 233 (last two sentences) & 235-38

3. The following claims remain to be resolved on the merits:
    - A5
    - A7—Paragraphs 70-73, 75-78
    - A9—Paragraphs 86-89
    - A10—Paragraphs 95 & 102
    - B—Paragraphs 129-131
    - D1
    - E
    - F
    - J—Paragraphs 213-14 and 216-22
    - K1
    - K2
    - K3--Paragraphs 230-32, 233 (first two sentences) 234 & 239
    - K5
    - K6
    - L1-3

Finally, the Court recognizes that the Supreme Court's decision in

*Montgomery v. Louisiana*, 141 So.3d 264, *cert. granted* (U.S. March 20, 2015) (No. 14-280) regarding the retroactive application of *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 2469 (2012), could have an impact on this petition for habeas relief. Therefore, Stage 2 briefing will not commence until that decision is rendered. Within 30 days after the Supreme Court issues its opinion in *Montgomery*, the parties shall submit a joint proposed briefing schedule for resolving the remaining claims, including, if applicable, any claims to be raised based on *Miller* and *Montgomery*.

**DONE** and **ORDERED** this the 4th day of November, 2015.


s/*Charles R. Butler, Jr.*
**Senior United States District Judge**